# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00387-CR

**Michael Ricardo Camarillo, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
NO. CR-00-186, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING**

Appellant Michael Ricardo Camarillo appeals his conviction for aggravated assault. *See* Tex. Pen. Code Ann. ' 22.02 (West 1994). The jury found appellant guilty of aggravated assault as alleged in the third count of the indictment and assessed his punishment at twenty years= imprisonment and a fine of $2,500.[1] The jury acquitted appellant of the offenses of aggravated sexual assault as charged in the first and second counts of the indictment.

## Points of Error

Appellant advances two points of error. First, appellant contends that the trial court erred in admitting into evidence an incriminating oral statement in violation of the statutory law. *See* Tex. Code Crim. Proc. Ann. art. 38.22 (West 1979 & Supp. 2002). Second, appellant challenges the factual

---

[1] The formal judgment and sentence is in error in reflecting that the fine assessed was $5,000. It does not track the jury=s verdict and will be reformed.

sufficiency of the evidence to sustain the conviction and claims that the admitted but tainted oral statement must not be considered in any factual sufficiency review.

**Background**

At trial on May 15, 2001, Daniel Walkuski, twenty-four years of age, testified as to what happened to him on March 4, 2000. Walkuski related that he had been charged with selling liquor to minors; that shortly after he was placed in Tank C2-7 of the Hays County jail, he was told by appellant and Michael Martinez to go to the Acorner@; that the Acorner@ was an area of the jail tank that the guard could not see from his post or position. There, Walkuski was told by Martinez in appellant=s presence, that if he (Walkuski) did not fight another inmate, Thomas Pearl, Athey@ would Akick my ass.@ Walkuski testified that he was afraid. He testified that he was forced to fight Pearl, but then appellant and Martinez wrapped towels around their hands and began hitting him in the nose and his chest. Walkuski testified that his nose was broken in two places, that he was badly beaten and in physical pain. Later, appellant and Martinez told him to place a plastic toothbrush holder up his anus in front of the other inmates in the tank, and then to lick or place the holder in his mouth. Walkuski related that he did this because he was afraid of appellant and Martinez who threatened to beat him again if he did not follow their instructions. He was removed from the jail tank the next day. At the time of the trial, Walkuski was again in jail on another charge. Walkuski explained that appellant was in a tank Anext door@ to where he was being held, and appellant had friends in the area where he (Walkuski) was in custody. He also stated that he had learning disabilities and was on medication for AADD@ (Attention Deficit Disorder).

Detective Thomas James Ormsby with the Hays County sheriff=s office began an investigation of the jail house incident three or four days after it happened. He came into possession of a plastic toothbrush holder and a white towel with blood on it. Ormsby obtained statements taken by the jail staff, including one by appellant, who acknowledged that an assault took place but denied any participation in it. Ormsby interviewed and took some statements from the inmates in C2-7 at the time of the incident. He interviewed Walkuski and secured his statement concerning the assaults. Thereafter, Ormsby secured arrest warrants for appellant, who had been released from jail.

Ormsby described Walkuski as having dark bruising under both eyes and bruising on his arms. He took Walkuski to the Central Texas Medical Center to be examined by a Asane@ (sexual assault nurse examiner).

On June 9, 2000, Detective Ormsby was informed that appellant had been arrested. He went to the jail and found appellant in the booking area. When Ormsby identified himself to appellant as the officer who had caused the arrest warrants to be issued, appellant spontaneously stated that he had Abeat the s _ _ _ out of the guy,@ but that he had not sexually assaulted anyone.

Julie Veidt, a Asane@ at the medical center, testified that she had examined Walkuski on March 8, 2000. She found that he Ahad lots of nasal trauma.@ He had purple areas under both of his eyes and across the bridge of his nose. There were abrasions on Walkuski=s nose, left cheekbone and right ankle. There was greenish bruising above his left eyebrow, and yellow and purple bruising on his arms. There were tender areas on the back of Walkuski=s head, the middle of his back, and upper-front of both thighs. Nurse Veidt found that Walkuski had a fractured nose which could cause a serious impairment of a

3

person=s ability to breathe; that there is a likelihood that a person with a fractured nose would suffer some sort of protracted loss of function or an impairment of the use of that body organ. Nurse Veidt also related that her examination of Walkuski=s anus revealed an injury consistent Awith the things he told me had happened.@

Timothy Daniel was a reluctant witness. He had been bench-warranted from prison to testify. He made clear to the prosecutor that he did not want to be a witness and that he did not recall the events which occurred in the jail when he was an inmate there. The statement he gave authorities in early March 2000 after the incident was admitted under Rule of Evidence 803(5). In it, Daniel stated that appellant and Martinez forced Pearl and Walkuski to fight, against their will, then strangled Walkuski, and forced him to use a toothbrush holder on himself; that the next morning he (Daniel) tipped off a guard when he went to the infirmary for a blood pressure check.

Michael Martinez, the co-defendant, was called as a State=s witness. He admitted that earlier he had entered a plea of guilty to aggravated assault upon Walkuski, acknowledged the stipulation of evidence used, and agreed that he had received fifteen years in prison as a part of a plea bargain. On cross-examination, Martinez admitted that he had beaten Athe s _ _ _ out of@ Walkuski but denied that appellant had participated in the offense.

Alexis Castro testified for the defense. He was an inmate in C2-7 when the incident in question occurred. Castro stated that Walkuski acted strangely when he first entered the tank by going around and shaking hands with approximately twenty-four inmates; that Walkuski later Afarted@ in the chow line which was against the jail rules and which upset the other inmates; and that still later Walkuski began

**4**

talking about girls committing oral sex on him. At this point, Castro related that Walkuski put a plastic toothbrush holder in his mouth and began bobbing up and down on it; that Walkuski thought it was funny and got some jeers and snickers; and that Walkuski even performed in view of the guard.

Castro testified that Walkuski subsequently went off in the corner; pulled his pants down and sat on the holder, but that no one forced him to do so. Castro did recall that Pearl and Walkuski got into a fight and Walkuski had a nose bleed. Castro stated that no one forced them to fight. He never saw appellant beat Walkuski or participate in any of the action described.

The twenty-one-year-old appellant was in jail for possession of marihuana at the time of the incident and was to be released in a few days. Appellant denied that he assaulted Walkuski at any time. He stated that he was asleep at the time Walkuski entered the jail tank, later saw Walkuski fighting with Pearl, and then saw Martinez beating Walkuski, but he did not take part. Appellant related that he was told that Walkuski had abused himself with a toothbrush holder, but he considered that Walkuski=s Abusiness.@ He had not observed the act. After his arrest for the instant offense, appellant denied that he made the oral statement attributed to him by Detective Ormsby.

**Admission of Oral Statement**

In his first point of error, appellant contends that the Atrial court erred in admitting into evidence an appellant=s alleged incriminating oral statement in violation of Texas Code of Criminal Procedure, article 38.22.@

On direct examination, Detective Ormsby testified that on June 9, 2000, he went to the county jail after he was informed that appellant had been arrested. The record then reflects:

**5**

I arrived at the jail at 10:00 o'clock in the morning, a little bit after. Michael Camarillo was in the holding area, the booking area. I told him that I was the detective that had the warrants issued for his arrest. And he made a statement that -- well, he made the statement that he beat the s _ _ _ out of the guy, and he had not sexually assaulted anybody.

I told Michael Camarillo that he did not need to have sexual intercourse to sexually assault somebody.

MR. LANFORD: Objection, Your Honor, narrative.

May I take the witness on voir dire?

THE COURT: You may.


VOIR DIRE EXAMINATION

BY MR. LANFORD:

Q. Mr. Ormsby, at the time of this June interview with Mr. Camarillo, after you advised him of -- that you were the detective on the case, did you advise him of anything else?

A. No, I did not.

MR. LANFORD: I=ll move to strike the responses of what Mr. Camarillo may have said to the officer, Your Honor --

MS. COMPTON: Your Honor --

MR. LANFORD: -- under 38.21 of the Code of Criminal Procedure is not complied with, Article 30.

MS. COMPTON: Your Honor, this was a res gestae statement. It was made without any time for Mr. Ormsby to even Mirandize this defendant.

MR. LANFORD: Objection --

**6**

MS. COMPTON: He immediately stated that before -- just as soon as he was told that he was the investigating officer.

MR. LANFORD: I object, Your Honor. That=s outside the record.

MS. COMPTON: If -- if I could be allowed to continue, I will establish that.

THE COURT: Proceed.

The prosecutor then elicited from Ormsby that after he identified himself to appellant he did not have an opportunity to say anything before appellant volunteered his statement. Ormsby stated that at the time he was not conducting an interview or interrogation of appellant. Ormsby acknowledged that the *Miranda* warnings were not given under the circumstances. When Ormsby later asked appellant if he wanted to speak about the offense, appellant replied: AYes, but not now.@ Ormsby then left the jail.

Subsequent to this testimony, the prosecutor, without objection, had Ormsby repeat the statement appellant made to him about beating Walkuski. The prosecutor then proceeded with her direct examination of Ormsby about other matters. On cross-examination, Ormsby, in response to defense counsel=s question about the voluntariness of the statement, repeated the Abeating@ portion of appellant=s statement. No ruling was ever obtained on appellant=s objections.

### Preservation of Error

In order to preserve error as to the admission of testimony, a party must present a timely specific objection, and secure an adverse ruling. Tex. R. App. P. 33.1; Tex. R. Evid 103(a)(1). Preservation of error for appellate review generally requires a timely objection. *Robinson v. State*, 16 S.W.3d 808, 809 (Tex. Crim. App. 2000). Here, Detective Ormsby had already testified as to appellant=s

**7**

oral statement and was relating other matters before an objection was interposed. Appellant=s objection was not timely. Moreover, appellant never obtained an adverse ruling on his objections. Absent an adverse ruling on an objection, nothing is preserved for review. *Rey v. State*, 897 S.W.2d 333, 336 (Tex. Crim. App. 1995); *Oestrick v. State*, 939 S.W.2d 232, 235 (Tex. App.CAustin 1997, pet. ref=d).

Still further, a specific objection must be made each time an offer of inadmissible evidence is made in order to preserve any error for review. *Purtell v. State*, 761 S.W.2d 360, 368 (Tex. Crim. App. 1988); *Hudson v. State*, 675 S.W.2d 507, 511 (Tex. Crim. App. 1984); *Miranda v. State*, 813 S.W.2d 724, 739 (Tex. App.CSan Antonio 1991, pet. ref=d). In addition, the improper admission of evidence is not reversible error or harmful when the same facts are proven by other unobjected-to testimony. *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998); *Anderson v. State*, 717 S.W.2d 622, 626-27 (Tex. Crim. App. 1986); *Miranda*, 813 S.W.2d at 739. In the instant case, the prosecutor had Detective Ormsby repeat appellant=s oral statement. Thus, the statement complained of was subsequently elicited without objection.

Appellant has based his point of error on a claim that there was a violation of article 38.22. Tex. Code Crim. Proc. Ann. art. 38.22 (West 1979 & Supp. 2002). Appellant=s trial objections, on which he did not obtain an adverse ruling, were Anarrative@ and later a motion to strike Ormsby=s testimony Aunder 38.21 of the Code of Criminal Procedure is not complied with, article 30.@ A complaint on appeal must comport with the trial objection in order to preserve error for review. *Curry v. State*, 910 S.W.2d 490, 495 (Tex. Crim. App. 1995); *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990); *Balfour v. State*, 993 S.W.2d 765, 770 (Tex. App.CAustin 1999, no pet.). A specific trial objection preserves only

**8**

the specific grounds cited for review. *Reed v. State*, 927 S.W.2d 289, 291 (Tex. App.CFort Worth 1996, no pet.). Appellant=s complaint on appeal was not raised in the trial court. *See State v. Mercado*, 972 S.W.2d 75, 78 (Tex. Crim. App. 1998). Appellant=s contention on appeal was not preserved for review because of the foregoing procedural defaults.

Even in the absence of the foregoing procedural defaults, appellant=s contention is without merit. A voluntary oral statement may be admissible on the issue of guilt if it is not the Aresult of@ or does not Astem from custodial interrogation.@ *May v. State*, 618 S.W.2d 333, 338 (Tex. Crim. App. 1981); *see also Chambliss v. State*, 647 S.W.2d 257, 262 (Tex. Crim. App. 1987). Article 38.22 of the Texas Code of Criminal Procedure and *Miranda* apply only to statements made as the result of custodial interrogation. Tex. Code Crim. Proc. Ann. art. 38.22, ' 5 (West 1979) (nothing in article precludes admission of statement made by accused if statement does not stem from custodial interrogation); *Miranda v. Arizona*, 384 U.S. 436, 478 (1966) (volunteered statements are not barred by Fifth Amendment or this holding). *See also Rhode Island v. Innis*, 446 U.S. 291, 300 (1980); *Lam v. State*, 25 S.W.3d 233, 239 (Tex. App.CSan Antonio 2000, no pet.).

ACustodial interrogation@ is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. *Miranda*, 384 U.S. at 444; *Cannon v. State*, 691 S.W.2d 664, 671 (Tex. Crim. App. 1987); *State v. Waldrop*, 7 S.W.3d 836, 839 (Tex. App.CAustin 1999, no pet.).[2] That a person makes a statement at a

---

[2] The Court of Criminal Appeals has said that Acustodial interrogation@ occurs when a person in custody is subjected to direct questioning or its functional equivalent, which occurs when police officers engage in conduct that they know is likely to elicit an incriminating response from the

police station in response to questioning does not automatically make the resulting statement the product of Acustodial interrogation.@ *Holland v. State*, 770 S.W.2d 56, 58 (Tex. App.CAustin 1989), *aff=d,* 802 S.W.2d 696 (Tex. Crim. App. 1991). Offhand remarks, not designed to elicit any kind of response, do not constitute custodial interrogation. *Innis*, 446 U.S. at 303; *Murray v. State,* 864 S.W.2d 111, 114 (Tex. App.CTexarkana 1993, pet. ref=d). General and routine questions also do not constitute interrogation. *Jones v. State*, 795 S.W.2d 171, 174 n. 3 (Tex. Crim. App. 1990).

In the instant case, the officer merely identified himself as the officer who obtained the arrest warrants when appellant immediately made his unsolicited statement. The statement was not the product of custodial interrogation. The fact that appellant was in custody does not show that the statement stemmed from custodial interrogation. *Kelley v. State*, 817 S.W.2d 168, 173 (Tex. App.CAustin 1991, pet. ref=d). Appellant=s first point of error is overruled for all the reasons stated.

### Factual Sufficiency

In his second point of error appellant contends that the Aevidence is factually insufficient to support a conviction for aggravated assault because the conviction relies on unlawfully admitted evidence.@ Appellant then adds, A[E]ven with the unlawfully admitted evidence, the evidence is factually insufficient to support a conviction for aggravated assault.@

---

defendant. *McCrory v. State*, 643 S.W.2d 725, 734 (Tex. Crim. App. 1982). Appellant relies on *McCrory*, but the record does not show Detective Ormsby=s actions to be the functional equivalent of Acustodial interrogation.@

Appellant does not challenge the legal sufficiency of the evidence to sustain the conviction. Further, a review of the factual sufficiency of the evidence begins with the presumption that the evidence supporting the judgment was legally sufficient. *See Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). In such a review, we consider the evidence without employing the prism of Ain the light most favorable to the verdict.@ *Id*. at 129. A reviewing court must consider *all* the evidence impartially, comparing evidence that tends to prove the existence of a disputed fact or facts with evidence that tends to disprove that fact or those facts. *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). The verdict or judgment is to be set aside only when the factual finding is against the great weight and preponderance of the evidence so as to be clearly wrong and unjust. *Clewis*, 922 S.W.2d at 129. In the factual sufficiency analysis, it must be remembered that the trier of fact is the sole judge of the weight and credibility of the testimony. *Santellan*, 939 S.W.2d at 164. Appellate courts should be on guard not to substitute their own judgment in these matters for that of the trier of fact. *Id*. One principle of the factual sufficiency analysis is deference to the findings of the jury or other fact finder. *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Moreover, A[a] decision is not manifestly unjust merely because the jury [or fact finder] resolved conflicting views of the evidence in favor of the State.@ *Id*. at 410.

In the latest clarification of the standard of review involved, the Court of Criminal Appeals made clear that the *Clewis* criminal factually sufficiency review encompasses both formulations utilized in civil jurisprudence. Evidence is factually insufficient if it is so weak as to be clearly wrong and manifestly unjust *or* the adverse finding is against the great weight and preponderance of the available evidence. *Johnson*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). Thus, in conducting a *Clewis* sufficiency review of

**11**

the elements of a criminal conviction, an appellate court must ask whether a neutral review, both for or against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine the confidence in the jury=s determination *or* that proof of guilt, although adequate taken alone, is greatly outweighed by contrary proof. *Id*.

In performing this review, due deference is still to be given to the jury=s or fact-finder=s determination. *Id*. at 8-9.[3] Consequently, we may find the evidence factually insufficient only where necessary to prevent manifest injustice. *Id.* at 9, 12; *Cain*, 958 S.W.2d at 407.

### ConsiderationC Improperly Admitted Evidence

Appellant first contends that before a factual sufficiency of the evidence review can be undertaken, the improper admission of his oral statement to Detective Ormsby must be removed from the equation. Appellant cites no authority for this contention. In a legal sufficiency challenge, a reviewing court must consider all the evidence, rightly or wrongly admitted, which the trier of fact was permitted to consider. *See Garcia v. State*, 919 S.W.2d 370, 378 (Tex. Crim. App. 1994); *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993); *Rodriguez v. State*, 939 S.W.2d 211, 218 (Tex. App.C Austin 1997, no pet.). We conclude that the same rule and reasoning are applicable to a factual sufficiency review. The cases discussing factual sufficiency review require that there be an impartial review of *all* the evidence. *See, e.g.*, *Johnson*, 23 S.W.2d at 11; *Santellan*, 939 S.W.2d at 164; *see also* 43 George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* ' 31.134 (2d ed. 2001). We reject

---

[3] For a discussion of appropriate deference, see *Johnson*, 23 S.W.3d 1, 8 (Tex. Crim. App. 2000).

appellant=s contention that we redact the oral statement made to Detective Ormsby from the evidence in considering his point of error.

**The Elements Contested**

Although the presumption is that the evidence is legally sufficient, appellant contends specifically, with the oral statement in the mix, that the evidence is factually insufficient to show that Walkuski suffered serious bodily injury as alleged and as required by section 22.02 of the Penal Code under which he was prosecuted. Section 22.02 provides in pertinent part:

(a) A person commits an offense if the person commits assault as defined in Section 21.01 and the person:

(1) causes serious bodily injury to another, including the person=s spouse.

Tex. Pen. Code Ann. ' 22.02 (West 1994).

Count III of the indictment alleges in pertinent part that appellant acting together with Michael Martinez on or about March 4, 2000:

did then and there knowingly cause serious bodily injury to Daniel Walkuski by repeatedly punching the aforesaid Daniel Walkuski about the face causing him to sustain a fractured nose.

ABodily injury@ means physical pain, illness, or any impairment of physical condition.@ Tex. Pen. Code Ann. ' 1.07(a)(8) (West 1994). A>Serious bodily injury= means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the

**13**

function of any bodily member or organ.@ *Id*. ' 1.07(a)(46). The distinction between Abodily injury@ and Aserious bodily injury@ is often a matter of degree and the distinction must be determined on a case-by-case basis. *See Moore v. State*, 739 S.W.2d 347, 349, 352 (Tex. Crim. App. 1987); *Madden v. State*, 911 S.W.2d 236, 244 (Tex. App.CWaco 1995, pet. ref=d).

Both parties seem to agree that a broken nose may amount to a protracted loss or impairment of the function of a bodily member or organ. *See Brown v. State*, 605 S.W.2d 572, 575 (Tex. Crim. App. 1980), *overruled on other grounds by Hedike v. State*, 779 S.W.2d 837 (Tex. Crim. App. 1989). Appellant contends, however, that the instant facts do not show this loss or impairment. Nurse Veidt testified that her examination of Walkuski showed that he had a broken nose and suffered Alots of nose trauma@ which could cause a serious impairment of a person=s ability to breathe. She expressed the opinion that when a person sustains a fractured nose there is a likelihood that the person will suffer some protracted loss of the function or an impairment of the use of the organ. Walkuski testified that as a result of the assault his nose was fractured in two places. On cross-examination, Walkuski was asked if his nose was giving him Aany trouble.@ He responded: AI have a hard B hard time breathing.@ The trial occurred fourteen months after the assault and injury.

Appellant also urges that Walkuski=s injury was not directly linked to appellant or his actions, independent of the improperly admitted oral statement. For reasons already stated, the oral statement is properly a part of the evidence to be considered. Appellant relies on his trial testimony and that of Martinez and Castro that he did not participate in the assault on Walkuski. Appellant also notes that while Walkuski

14

had first indicated that appellant and Martinez Aboth@broke his nose, Walkuski then changed his testimony, stating that Pearl and Martinez did so.

To the contrary is appellant=s statement to Ormsby that he had severely beaten Walkuski and Martinez=s testimony that he had also personally beaten Walkuski. Inmate Daniel and Walkuski testified that appellant and Martinez both beat Walkuski and earlier had forced Pearl and Walkuski to fight each other.

The indictment charged that appellant and Martinez were acting together. *Cf. Pitts v. State*, 569 S.W.2d 898, 900 (Tex. Crim. App. 1978); *Hanson v. State*, 55 S.W.3d 681, 692 (Tex. App.CAustin 2001, pet. ref=d). The jury charge included an instruction on the law of parties which allows the State to enlarge a defendant=s criminal responsibility to acts in which he may not be the primary actor. *See* Tex. Pen. Code Ann. ' 7.02 (West 1994); *Goff v. State*, 931 S.W.2d 537, 544 (Tex. Crim. App. 1996); *Rivera v. State*, 990 S.W.2d 882, 887 (Tex. App.CAustin 1999, pet. ref=d). To establish liability as a party, the State must show that the defendant had the intent to promote or assist the commission of the offense. *Rivera*, 990 S.W.2d at 887. The evidence must reflect that at time of the offense the parties acted together each doing some part to execute the common design, a design which can be shown by direct or circumstantial evidence. *Id*. at 887-88. Under the evidence the jury could have concluded that appellant and Martinez were acting together in committing the crime charged, even if appellant did not actually break Walkuski=s nose himself. *See Hartson v. State*, 59 S.W.3d 780, 786 (Tex. App.CTexarkana 2001, no pet.).

**15**

We do not substitute our judgment for that of the jury and will set aside a verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Johnson*, 23 S.W.3d at 7; *Clewis*, 922 S.W.2d at 129; *Saldana v. State*, 59 S.W.3d 703, 709 (Tex. App.CAustin 2001, pet. filed). Appellant=s second point of error is overruled.

The judgment is reformed to reflect the fine assessed by the jury to be $2,500 rather than $5,000. As reformed, the judgment is affirmed.

_____

John F. Onion, Jr., Justice

Before Justices B. A. Smith, Yeakel and Onion[*]

Reformed and, as Reformed, Affirmed

Filed: May 9, 2002

Publish

*   Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov=t Code Ann. ' 74.003(b) (West 1998).