COURT
OF APPEALS
SECOND
DISTRICT OF TEXAS
FORT WORTH
NO. 2-02-038-CV
 
IN THE MATTER OF T.L.C. II
 
------------
FROM THE 323
RD DISTRICT COURT OF
TARRANT COUNTY
------------
MEMORANDUM OPINION(1)
------------
After a bench trial, Appellant T.L.C. II
was adjudicated delinquent for committing aggravated sexual assault by contact
of a child younger than fourteen years old and was placed on two years'
probation. In one point on appeal, he contends that "the trial court abused
its discretion by allowing the State to impeach their own witness with her
hearsay statement implicating the Appellant where the State was on notice that
the witness did not remember the substance of her statement." We affirm the
trial court's judgment.
D.S., the father of B.S., a three-year-old
female, testified that he moved in with T.L.C. I for a time while his divorce
from B.S.'s mother was pending. T.L.C. I's two minor children, T.L.C. II and his
older sister, T.C., also lived in the home. D.S. worked nights. D.S. testified
that one afternoon, after he awoke from his nap, T.C. told him that he needed to
ask T.L.C. II what had happened during his nap. He did, and T.L.C. II did not
answer, so, he testified, T.C. told him that she had walked into the room and
had seen T.L.C. II licking B.S. B.S. then confirmed that T.L.C. II had
"licked [her] bottom," indicating her genital area.
During the police investigation, T.C.
spoke with Detective Smith and gave a written statement. He testified that she
told him that she had seen T.L.C. II lick B.S. and that T.L.C. II had told her
that he had done it. D.S. and Smith testified after T.C., who denied telling
them anything and claimed not to remember anything about the incident, including
the information in her written statement. She had previously met with the
prosecutor and told her that she did not remember anything:

        
 Q Okay. How many times did we actually talk other than today?
        
 A Another day, and then I talked to another lady.
        
 Q So I only talked to you once for about five minutes, right?
        
 A Yeah.
        
 Q And you told me you didn't remember anything, right?
        
 A Yes, I did.

In the discussion of his sole point on
appeal, T.L.C. II appears to complain of the introduction of inadmissible
evidence through three different witnesses: T.C., D.S., and Smith. The State
argues that T.L.C. II failed to preserve error. We agree.
When the prosecutor was questioning T.C.,
the following exchange took place:

        
 Q Okay. Do you remember seeing [T.L.C. II] licking [B.S.] in her private area?
        
 A No, I never seen [T.L.C. II] lick anybody.
        
 Q Okay. Do you remember saying that?
        
 A No, I don't.
        
 Q Do you recall making a statement that I made her get out and asked her what
 happened and she said that [T.L.C. II] licked me on my bottom?
         A
 No, I don't.
        
 Q Do you recall telling the officer that, so I asked my brother, and he said I
 licked her?
        
 A No, I don't.
            
 . . . .
        
 Q Would you keep up with the fact that your brother was sexually abusing a
 little girl?
        
 A No, because that's his business. I don't even remember him doing nothing to
 the little girl.
            
 . . . .
        
 Q So you're sure . . . you never told [D.S.] that you saw him licking her?
        
 A Yeah, I'm sure I didn't tell [D.S.] anything.
        
 Q And you're sure you never told the police you saw him licking her?
        
 A Yeah, I'm sure.
        
 Q And you're sure you never told the police that your brother admitted that he
 licked her to you?
        
 A Yeah, it's in the statements, but I don't remember saying it.

The only objections lodged by defense
counsel during T.C.'s testimony were to statements made by Smith to T.C. and the
offer of T.C.'s written statement into evidence. The objections were sustained.
Any complaints regarding T.C.'s testimony were therefore not preserved.(2)
Similarly, no objection was lodged to
Smith's testimony that T.C. had told him that T.L.C. II had told her that he had
licked B.S.'s bottom. T.L.C. II has thus failed to preserve any complaint about
that statement for review.(3)
Regarding the testimony of D.S., the
prosecutor asked:

        
 Q And what did you see when you went into the living room?
        
 A Well, [T.L.C. II] was sitting in the recliner watching TV, I'm not sure what
 it was, and [T.C.] had, on the way down the hallway, had asked -
        
 [Defense Counsel]: Your Honor, I'm going to object to what [T.C.] said as
 hearsay at this point.
 
 
 . . . .
 
 
        
 THE COURT: I'll overrule the objection.
        
 Q What did [T.C.] say to you?
        
 A On the way down the hallway, [T.C.] had told me that I needed to ask [T.L.C.
 II] what happened.
 
 
 . . . .
 
 
        
 Q And what did you do after that?
        
 A I asked him again and still the puzzlement. That's when [T.C.] came down the
 hallway.
         Q
 And what did she say?
        
 A She told me that --
        
 [Defense Counsel]: Again, Your Honor, I'm going to object. I'll just have a
 running objection if the Court will allow that. We're using it for impeachment
 purposes, but we're not saying what we're impeaching her about. My problem is,
 we're not being specific if she's even asked her. We never had much
 conversation other than her statement. Now we're talking about what she said
 to --
            
 . . . .
        
 [Defense Counsel]: We're going to object, judge, because basically she's
 already talked to her. She puts her on the stand knowing she's going to say I
 don't remember, I don't know, I don't remember, and then she's impeaching her
 own witness.
 
 
 . . . .
 
 
        
 [Defense Counsel]: I mean, she has the opportunity to impeach her own witness,
 I understand that, but to say I don't remember and then bring in outside
 statements which are hearsay when she says I don't remember [is] outside the
 bounds of the Rules of Evidence.
 
 
 . . . .
 
 
        
 THE COURT: I'll overrule the objection. You can answer that question, if you
 can remember that question.
            
 . . . .
        
 Q After you confronted [T.L.C. II], what did . . . [T.C. tell you]?
            
 . . . .
        
 A [T.C.] had told me that she walked into the room and saw [T.L.C II] licking
 [B.S.].

Contrary to the State's contention, we
hold that defense counsel's objections to D.S.'s testimony about T.C.'s alleged
out-of-court statements clearly showed that the defendant was objecting that the
State had called T.C. for the sole purpose of impeaching her with otherwise
inadmissible hearsay.(4)
Unfortunately for T.L.C. II, however, the
same evidence was admitted upon the State's questioning of Smith:

        
 Q Okay. Did [T.C.] tell you that she observed her brother licking [B.S.]?
        
 [Defense Counsel]: Again, we're going to object, Your Honor. That's clearly
 hearsay at this point.
 
 THE COURT: Sustained.
 [Prosecutor]: Your Honor, this is
 impeachment of a specific question I asked [T.C.] on the stand, and she
 denied making those statements.
 
        
 [Defense Counsel]: And it's our position, as the officer said, this is
 just a report. We'll just renew our objection, just like we had it last time,
 judge. We're trying to circumvent the fact that you can't get this statement
 into evidence by asking specific questions. We're going back to our earlier
 objection that [T.C.] was not saying she didn't say it. As a matter of fact,
 she said she wrote that down. She just didn't remember any of it, okay? So
 they have to deny that.
 
 
 . . . .
 
 
        
 [Defense Counsel]: Your Honor, it's our position, too, that they're just
 bolstering the previous testimony of [D.S.]. I mean they've got the same sort
 of - [Emphasis added.]
 
     . . . .
 

               
THE COURT: All right. I'm going to go ahead and reverse my ruling, and I'll
overrule the objection.

        
 Q [Prosecutor]: Did she tell you she had seen her brother licking [B.S.]?
        
 A Yes, ma'am.

To preserve error for review, a party must
make a specific objection every time the State offers inadmissible evidence.(5)
Unlike the objections to D.S.'s testimony, defense counsel's objections to
Smith's testimony that T.C. told him she had seen T.L.C. II lick B.S. did not
clearly show that the defendant was objecting that the State had called T.C. for
the sole purpose of impeaching her with otherwise inadmissible hearsay. Thus, no
error in the admission of Smith's testimony was preserved for review.(6)
The improper admission of evidence does
not constitute reversible error if the same facts are proven by other properly
admitted evidence.(7) Because T.L.C. II failed to
properly object to Smith's testimony, any alleged error in the admission of
D.S.'s testimony was also not preserved for review.(8)
We overrule T.L.C. II's sole point and affirm the trial court's judgment.
 
                                                                       
PER CURIAM
 
PANEL F: DAUPHINOT, HOLMAN, and GARDNER,
JJ.
[Delivered MARCH 13, 2003]


1. See Tex. R. App. P. 47.4.
2. See Tex. R. App. P. 33.1(a)(1); Mosley v.
State, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g), cert.
denied, 526 U.S. 1070 (1999).
3. See Tex. R. App. P. 33.1(a)(1); Mosley,
983 S.W.2d at 265.
4. See Kelly v. State, 60 S.W.3d 299, 300 n.1
(Tex. App.--Dallas 2001, no pet.).
5. Purtell v. State, 761 S.W.2d 360, 368 (Tex.
Crim. App. 1988); Hudson v. State, 675 S.W.2d 507, 511 (Tex. Crim. App.
1984); Camarillo v. State, 82 S.W.3d 529, 534 (Tex. App.--Austin 2002,
no pet.).
6. See Tex. R. App. P. 33.1(a)(1); Mosley,
983 S.W.2d at 265.
7. Couchman v. State, 3 S.W.3d 155, 160-61 (Tex.
App.--Fort Worth 1999, pet. ref'd).
8. See Purtell, 761 S.W.2d at 368; Hudson,
675 S.W.2d at 511; Camarillo, 82 S.W.3d at 534.