TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-03-00472-CR






James Quisenberry, Appellant


v.


The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT

NO. 922635, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N




 James Quisenberry appeals an order revoking his community supervision. In 1993,
Quisenberry pleaded guilty to the offense of indecency with a child by contact and was sentenced
to ten years' imprisonment. See Tex. Pen. Code Ann. § 21.11(a)(1) (West 2003). Imposition of
sentence was suspended, and Quisenberry was placed on community supervision for a term of ten
years. After Quisenberry completed nine years of his probation, the State filed a motion to revoke
his community supervision alleging that Quisenberry had failed to report on one occasion in 1998,
that he was delinquent in payment of his fees by $80, and that he had been terminated from his sex
offender therapy program. After a hearing, the trial court found that Quisenberry had violated his
community supervision and sentenced Quisenberry to six years' imprisonment. 

 In his first two points of error Quisenberry contends that the trial court improperly
admitted hearsay evidence of his failure to report and his delinquency in payment. Quisenberry
asserts in his third point of error that a condition of his community supervision requiring successful
completion of therapy, as determined by the therapist, was unconstitutionally vague. In his fourth
point of error, he contends that the trial court abused its discretion by considering statements he
made to his therapist obtained in violation of his Fifth Amendment protection from self
incrimination. Because the trial court did not abuse its discretion in finding that Quisenberry
violated the conditions of his community supervision, we affirm the trial court's order revoking
community supervision and imposing sentence.


BACKGROUND


 The thirty-two conditions of Quisenberry's community supervision included
requirements that he regularly report to his community supervision officer, pay a monthly probation
supervision fee and:


Enroll, actively participate in and cooperate fully in Sex Offender therapy as
designated by Probation Officer and while in such program, submit to psychological
or psychiatric testing, evaluation as well as individual, family or group counseling as
directed by said therapist/Probation Officer and remain in such program until
successfully completed, as determined by the therapist, and attend all sessions and
complete all homework assignments.



After Quisenberry completed four years of community supervision, the State moved to revoke his
community supervision alleging that he was delinquent in payment of his fees by $52 and that he
failed to actively participate in and cooperate fully in his sex offender therapy. After a hearing, the
trial court continued Quisenberry's community supervision through an order dated December 30,
1997.

 Quisenberry continued on community supervision until August 2002 when he was
arrested in connection with a second motion to revoke his community supervision. This motion
alleged that Quisenberry failed to report to his community supervision officer as scheduled on
August 18, 1998, was delinquent in payment of his community supervision fee by $80, and had been
terminated from sex offender therapy on July 28, 2002.

 A hearing on the State's motion was conducted in October 2002. The State called
Quisenberry's community supervision officer, Gloria Lira, to testify about Quisenberry's failure to
report and pay fees. Lira testified that her records indicated that Quisenberry was delinquent in
payment of his community supervision fees by $160. Lira confirmed that Quisenberry had regularly
reported to her in compliance with the conditions of his supervision. Then, based on her review of
Quisenberry's file, Lira testified that Quisenberry had missed a scheduled appointment with his prior
community supervision officer on August 18, 1998. Lira also testified that she received a letter from
Quisenberry's therapist indicating that Quisenberry had been terminated from the sex offender
treatment program.

 The State also called Vivian Lewis-Heine, Quisenberry's sex offender therapist. 
Lewis-Heine treated and supervised Quisenberry's treatment from the time he began therapy in 1993. 
She explained that she first terminated Quisenberry's treatment in 1997 for refusal to participate in
the treatment program. She cited major violations such as the use of pornography, use of marijuana,
suspicion of use of alcohol and other substances, and contact with children in violation of a no
contact order. Lewis-Heine testified that she continued treating Quisenberry after 1997 and
discussed the factors that led her to again terminate treatment in 2002. She explained that
Quisenberry had slowly progressed in his therapy until about 1999 when he "began to nosedive
slowly." She referred him for psychiatric care in 2000 when he began having attachment issues with
his biological mother and his own children. She stated that he took a series of polygraph
examinations in 2001, which he did not pass. In a December 2001 therapy session, Quisenberry
reported that he had sexual arousal when his twelve-year-old son Jacob placed his thumb in
Quisenberry's mouth. Quisenberry also reported that he had looked in an ashtray for marijuana
roaches and that he tasted a bag of powder he found at work hoping it was cocaine. Lewis-Heine
described an incident in which Quisenberry reported that he was attracted to a co-worker's teenage
daughter and that he felt that driving his co-worker home was an opportunity to find out where the
daughter lived.

 Lewis-Heine explained why Quisenberry's behavior indicated that he should be
terminated from therapy:


So it came to my attention in June or July of 2002 that these were situations that were
really beyond the normal reporting in a treatment session. In the first three years of
treatment we expect this type of reporting, but in the ninth year that means something
is not clicking and I believe that we need to defer to the Court to make a decision
about the safety of the community regarding these . . . thoughts, feelings and
behaviors that are being reported to us.



Lewis-Heine also voiced concern that Quisenberry was a threat to the minor children of the woman
he was dating. 

 At the hearing, Quisenberry cross-examined the State's witnesses and called the
owner of the gas station where he worked, his father, his ex-wife, and his girlfriend as witnesses. 
Quisenberry's witnesses demonstrated that Quisenberry was a dependable worker and a devoted
father. They established that Quisenberry made extensive efforts over nine years to comply with the
rigorous conditions of his community supervision. At the conclusion of the hearing, the trial court
granted the State's motion to revoke community supervision and imposed a sentence of six years'
imprisonment.


DISCUSSION


 In his first two points of error, Quisenberry contends that the evidence was
insufficient to support revocation of his community supervision because the evidence showing that
he failed to report to his community supervision officer and was delinquent in payment of fees was
improperly admitted. In conducting a factual or legal sufficiency review, however, we consider all
of the evidence, rightly or wrongly admitted. Camarillo v. State, 82 S.W.3d 529, 537 (Tex.
App.--Austin 2002, no pet.). We will therefore construe Quisenberry's first two issues as a
challenge to the improper admission of hearsay evidence.

 The root of Quisenberry's contention is that Lira, his current community supervision
officer, did not have personal knowledge of his failure to report and of his delinquency in payment
of fees before her service. Lira testified only from business records that were not introduced into
evidence. Quisenberry contends that Lira's testimony about the contents of the records was
inadmissible hearsay and could not be used as evidence of his failure to meet the conditions of his
community supervision. We need not pass on this question, however, because Quisenberry has not
preserved error. Lira testified without objection that, as of October 14, 2002, Quisenberry was
delinquent in payment of his community supervision fees by $160. When Lira was asked whether
Quisenberry was current on his reporting to his prior community supervision officer, Quisenberry
objected raising hearsay grounds. This objection was sustained. The State then established that Lira
was the custodian of Quisenberry's community supervision records and again asked about
Quisenberry's reporting history. Quisenberry objected and questioned Lira on voir dire. He
established that Lira was testifying from records that were ordinarily kept in her office file cabinet
and that Quisenberry's files had been stored there since she took over from the prior community
supervision officer. After the voir dire examination, Quisenberry announced that he had no further
questions and did not obtain a ruling on his objection. Lira then testified that Quisenberry missed
an appointment on August 18, 1998. In cross examining Lira, Quisenberry himself elicited
testimony about both the missed appointment and Quisenberry's delinquency in payment. 

 In order to preserve error in the admission of evidence, a defendant must make a
specific and timely objection and obtain a ruling from the trial court. Martinez v. State, 98 S.W.3d
189, 193 (Tex. Crim. App. 2003). A defendant must object each time inadmissible evidence is
offered unless he requests a hearing or has obtained a running objection. Id. Here, Quisenberry did
not object at all to the evidence that he was delinquent in payment of fees. Furthermore, Quisenberry
did not obtain a ruling on his objection to Lira's testimony based on the records in her possession. 
In fact, Quisenberry elicited much of the same testimony on cross examination that he now
complains of on appeal. Because Quisenberry has failed to preserve error, we overrule his first and
second points of error. 

 In his remaining points of error, Quisenberry challenges the constitutionality of the
condition of his community supervision that he enroll, actively participate in, and cooperate fully in
sex offender therapy and challenges the use of statements he made in therapy against him. Because
Quisenberry did not object to the evidence of his failure to report and his delinquency in payment
of fees, however, these were proper grounds for revocation of community supervision. We need not
address Quisenberry's other contentions since a single violation of community supervision will
support the court's revocation order. Sanchez v. State, 603 S.W.2d 869, 871 (Tex. Crim. App. 1980)
(single probation violation will support revocation of probation).


CONCLUSION


 Because we overrule Quisenberry's first two points of error, we have addressed all
issues raised that are necessary to the final disposition of his appeal. We affirm the trial court's order
revoking his community supervision.



 

 Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Pemberton

Affirmed

Filed: September 30, 2004

Do Not Publish