# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00383-CR

**William Merida, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT NO. D-1-DC-05-204692, HONORABLE JON N. WISSER, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

The jury convicted appellant William Merida of the offense of cocaine possession. *See* Tex. Health & Safety Code Ann. § 481.102(3)(D) (West Supp. 2006), § 481.115(a) (West 2003). The district court, after finding that Merida had been convicted of three prior felonies as alleged in the indictment, assessed punishment at 25 years' imprisonment. In three points of error, Merida contends that the State failed to give proper notice of its intent to introduce Merida's prior convictions and asserts that the evidence was legally and factually insufficient to prove his prior convictions.[1] We affirm.

---

[1] Merida filed pro se correspondence with this Court indicating dissatisfaction with his appointed appellate counsel and the issues his counsel chose to address on appeal. The record indicates that on March 9, 2007 (after this case was submitted on the briefs), Merida filed with the district court a motion to appoint a new attorney. However, there is no indication in the record that the district court granted the motion or that Merida's appointed counsel has filed with this Court a motion to withdraw from her representation. *See* Tex. R. App. P. 6.5. Thus, it appears from the record that a new attorney has not been appointed and that Merida's appointed counsel has not

## BACKGROUND

The indictment alleged that on or about September 12, 2005, Merida intentionally or knowingly possessed a controlled substance, namely cocaine, in an amount of four grams or more but less than 200 grams. In three enhancement paragraphs, the indictment further alleged that Merida had previously been convicted of:

Theft on the 20th day of July, 1990, in Cause Number 103,215 in the 147th Judicial District Court of Travis County, Texas;

Burglary of Habitation on the 20th day of July, 1990, in Cause Number 103,133 in the 147th Judicial District Court of Travis County, Texas;

Burglary of Building on the 27th day of May, 1988, in Cause Number 90,663 in the 299th Judicial District Court of Travis County, Texas.

After the jury found Merida guilty of cocaine possession, the case proceeded to sentencing. Merida chose to have the district court assess punishment.

Merida pleaded not true to the allegations in the indictment that he had three prior felony convictions. To prove that the allegations were true, the State first called Merida's mother to the stand for the purpose of identifying her son as the same person in mugshots that were contained in two penitentiary packets ("pen packets") from Merida's prior convictions.[2] After identifying her son in the photographs and identifying her son in the courtroom, Ms. Merida also

withdrawn. Accordingly, we will consider only the issues within the brief timely filed by Merida's appointed counsel and not the issues that Merida, acting pro se, would like us to consider. *See Scheanette v. State*, 144 S.W.3d 503, 505 n.2 (Tex. Crim. App. 2004) (no right to hybrid representation); *see also Dunn v. State*, 819 S.W.2d 510, 520 (Tex. Crim. App. 1991) (no right to appointed counsel of choice).

[2] There were only two pen packets for Merida's three prior convictions because the convictions for theft and burglary of a habitation were prosecuted together.

testified that Merida's date of birth was April 15, 1970, which was identical to the date of birth of the inmate described in the pen packets.

Also for the purpose of identifying Merida as the person described in the pen packets, Merida was directed to show the court his tattoos. The record reflects that Merida had a tattoo of "Aries" on his outside upper-right arm, a tattoo of a dog face on his left chest, and a tattoo of "BBWM" on his outside upper-left arm.[3] These tattoos were consistent with the descriptions of the tattoos in the pen packets.

The State then moved to admit the two pen packets and an additional exhibit that contained "a better copy" of some of the documents in the pen packets. Merida objected to the admission of all three exhibits on the basis that he did not think that "the State has sufficiently proved that the individual contained in these documents is, in fact, the defendant in this case." Merida added that "the fingerprints are the best indicator of who the individual is contained in the pen packet. And we haven't heard anything about those." The State responded that, because the convictions were old, the "fingerprints are bad." The district court overruled Merida's objections and admitted the exhibits.

Merida next objected to the admission of the pen packets based upon lack of notice. Prior to trial, Merida requested, and the district court ordered, that the State provide notice of its intent to introduce extraneous offense evidence. Merida claimed that, although the State had provided him with notice pursuant to rule 404(b) of the rules of evidence, the State had not provided him with notice pursuant to article 37.07 of the code of criminal procedure. In response, the State

---

[3] The record does not reflect what "BBWM" means.

3

argued that "the actual indictment itself is sufficient notice for the defense." The district court agreed with the State and overruled Merida's objection. However, the district court offered to give Merida more time to "meet any of these allegations" if needed. Merida declined the offer.

The district court found that the allegations concerning the prior felony convictions were true and sentenced Merida to the minimum punishment of 25 years' imprisonment for "habitual criminals." This appeal followed.

## DISCUSSION

On appeal, Merida challenges only his sentence, not the underlying conviction for possession of a controlled substance.

**Notice**

In his first point of error, Merida claims that the State did not provide him with sufficient notice of its intent to introduce into evidence the pen packets regarding Merida's prior convictions. Article 37.07, section 3(g) of the code of criminal procedure provides that:

> On timely request of the defendant, notice of intent to introduce evidence under this article shall be given in the same manner required by Rule 404(b), Texas Rules of Evidence. If the attorney representing the state intends to introduce an extraneous crime or bad act that has not resulted in a final conviction in a court of record or a probated or suspended sentence, notice of that intent is reasonable only if the notice includes the date on which and the county in which the alleged crime or bad act occurred and the name of the alleged victim of the crime or bad act. The requirement under this subsection that the attorney representing the state give notice applies only if the defendant makes a timely request to the attorney representing the state for the notice.

Tex. Code Crim. Proc. Ann. art. 37.07, § 3(g) (West 2006).

4

The State does not dispute that Merida made a timely request and that the State was required to provide notice. However, the State argues that "[t]he indictment itself provided adequate notice under article 37.07."

Merida responds that the indictment did not provide the names of the alleged victims, the dates the crimes occurred, or the punishment assessed. However, the State is required to provide the name of the alleged victim and the date the crime occurred only when the alleged extraneous offense did not result in a final conviction, *see id*., and there are no circumstances under article 37.07 in which the State is required to provide notice of the punishment assessed.

The purpose of article 37.07, section 3(g) is to avoid unfair surprise and "trial by ambush." *Roman v. State*, 986 S.W.2d 64, 67 (Tex. App.—Austin 1999, pet. ref'd); *Nance v. State*, 946 S.W.2d 490, 493 (Tex. App.—Fort Worth 1997, pet. ref'd). In this case, the enhancement paragraphs in the indictment specifically alleged Merida's prior felony convictions by date, cause number, court, county, state, and offense. Given the specificity of the information provided in the indictment, we conclude that Merida was not unfairly surprised by the introduction of the pen packets relating to those convictions. We hold that the enhancement paragraphs in this indictment provided Merida with sufficient written notice of the prior convictions on which the State intended to rely on to enhance his punishment. *See Johnson v. State*, 84 S.W.3d 726, 728 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (citing *Coleman v. State*, 577 S.W.2d 486, 488 (Tex. Crim. App. 1979)). We overrule Merida's first point.

**Sufficiency of the evidence**

In his second and third points, Merida asserts that the evidence is legally and factually insufficient to prove his prior felony convictions. Specifically, Merida contends that the documents in the pen packets were illegible, that the "more legible" copies of the documents were not "pen packet[s] certified by the Texas Department of Corrections," and that there was no fingerprint testimony establishing that the fingerprints on file with the Department of Corrections were the same as the fingerprints taken from Merida when he was arrested for the present offense.

In a legal sufficiency review, we examine the evidence in the light most favorable to the finding and determine whether a rational trier of fact could find beyond a reasonable doubt that appellant was the same person convicted in the prior offenses. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Sanders v. State*, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003). In a factual sufficiency review, we ask the same question, but we view the evidence in a neutral light. *See Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We determine whether the evidence supporting the finding is so weak that the finding is clearly wrong and manifestly unjust or whether the finding is against the great weight and preponderance of the conflicting evidence. *See id*. at 415. We will not reverse a finding on a factual sufficiency challenge unless we can say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the finding. *See id*. at 417.

The court of criminal appeals recently explained that there is more than one way to prove a prior conviction:

> To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that (1) a prior conviction exists, and (2) the

defendant is linked to that conviction. No specific document or mode of proof is required to prove these two elements. There is no "best evidence" rule in Texas that requires that the fact of a prior conviction be proven with any document, much less any specific document. While evidence of a certified copy of a final judgment and sentence may be a preferred and convenient means, the State may prove both of these elements in a number of different ways. . . . Just as there is more than one way to skin a cat, there is more than one way to prove a prior conviction.

*Flowers v. State*, No. PD-1081-06, 2007 Tex. Crim. App. LEXIS 428, at *7 (Tex. Crim. App. Apr. 18, 2007).

Methods of proving a prior conviction include: (1) witness testimony identifying the accused as the same person previously convicted; (2) a judicial stipulation by the defendant; (3) the introduction of certified copies of the judgment and sentence containing the defendant's fingerprints, supported by expert testimony identifying the prints as the defendant's; and (4) the introduction of a photograph or detailed description of the person in the documents showing the prior conviction that can be compared with the accused's appearance in court. *See Littles v. State*, 726 S.W.2d 26, 31 (Tex. Crim. App. 1987). These methods are not exclusive, however; whether sufficient links are present is determined on a case-by-case basis. *See Human v. State*, 749 S.W.2d 832, 835-36 (Tex. Crim. App. 1988). "[O]rdinarily the proof that is adduced to establish that the defendant on trial is one and the same person that is named in an alleged prior criminal conviction or convictions closely resembles a jigsaw puzzle." *Id*. "The pieces standing alone usually have little meaning. However, when the pieces are fitted together, they usually form the picture of the person who committed that alleged prior conviction or convictions." *Id*.

Furthermore, it is the trier of fact that "fits the pieces of the jigsaw puzzle together and weighs the credibility of each piece." *Flowers*, 2007 Tex. Crim. App. LEXIS 428, at *12.

7

"Regardless of the type of evidentiary puzzle pieces the State offers to establish the existence of a prior conviction and its link to a specific defendant," the trier of fact looks at the "totality of the evidence admitted" to determine "if these pieces fit together sufficiently to complete the puzzle." *Id*. In this case, the trier of fact was presented with a puzzle that contained many old pieces. Nevertheless, we conclude that the "pieces fit together sufficiently to complete the puzzle."

State's Exhibit 6 was the pen packet relating to Merida's 1988 conviction for burglary of a building. It contained the following:

- mugshots;

- a faded "Judgment of Probation" in which Merida's name is barely legible;

- an "Amended Motion to Revoke Probation" in which Merida's name is clearly legible in the style of the motion;

- a heavily-faded "Judgment Revoking Probation" that is largely illegible, except for the last page of the judgment in which Merida's name, the offense, the court, and the signature of the presiding judge are legible;

- an indictment for burglary of a building in which Merida's name, the date of the indictment, and the court in which the indictment was filed are clearly legible; and

- a document from the Department of Corrections that includes fingerprints, Merida's faded last name and inmate number, a date of birth, and a physical description of the inmate, including a faded but legible description of the inmate's tattoos.

State's Exhibit 7 was the pen packet relating to Merida's 1990 convictions for theft and burglary of a habitation. It contained the following:

- mugshots;

8

- a "Judgment on Plea of Guilty" and a "Judgment and Sentence of the Court" in which Merida's name, the offense of theft, and the date of the conviction are clearly legible;

- an indictment for the offense of burglary of a habitation in which Merida's name, the date of the indictment, and the court in which the indictment was filed are clearly legible;

- a somewhat-faded "Judgment on Plea of Guilty" and a "Judgment and Sentence of the Court" in which Merida's name, the offense of burglary of a habitation, and the date of the conviction are clearly legible; and

- a document from the Department of Corrections that, unlike the document in Exhibit 6, is only slightly faded and includes fingerprints, Merida's full name, inmate number, date of birth, and physical description, including a clearly legible description of his tattoos.

State's Exhibit 8 contains copies of several of the documents from State's Exhibits 6 and 7. Although Merida is correct that these documents are not "certified pen packets," they appear to be identical copies of the judgments in the pen packets. The only difference is that the copies in Exhibit 8 are easier to read than the copies in Exhibits 6 and 7.[4]

However, although the certified pen packets in Exhibits 6 and 7 are difficult to read and, in places, barely legible, they are not, as Merida claims, "of such poor quality [that] they were illegible." In particular, the documents in Exhibit 7 are clearly legible and the relevant information

---

[4] Because Merida challenges only the *sufficiency* of the evidence supporting the district court's finding and not the *admissibility* of the evidence, we need not address the question of whether Exhibit 8 was admissible. In sufficiency challenges, we review all of the evidence considered by the trier of fact, rightly or wrongly admitted. *See Camarillo v. State*, 82 S.W.3d 529, 537 (Tex. App.—Austin 2002, no pet.). However, we note again the recent holding in *Flowers* that "[t]here is no 'best evidence' rule in Texas that requires that the fact of a prior conviction be proven with any document, much less any specific document." *Flowers v. State*, No. PD-1081-06, 2007 Tex. Crim. App. LEXIS 428, at *7 (Tex. Crim. App. Apr. 18, 2007).

9

was readily apparent in each document. Specifically, the "Judgment on Plea of Guilty" and the "Judgment and Sentence of the Court" for both the theft and burglary of a habitation convictions were clearly legible. Merida's full name, the offenses he was convicted of, the date of the convictions, and the cause numbers were readily apparent in these documents. Additionally, the indictments were also clearly legible, and they contained the same cause numbers that were contained in the judgments, as well as Merida's full name and the offenses for which he was indicted. We conclude that a rational trier of fact could reasonably infer from the documents in Exhibit 7 that Merida was the person convicted of theft and burglary of a habitation as alleged in the indictment.

As explained above, many of the documents in Exhibit 6 were faded and difficult to read. However, there is enough legible information in each of the documents from which a rational trier of fact could reasonably infer that Merida was convicted of the offense described in the indictment, especially when the documents are considered together. For example, Merida's indictment for burglary of a building is clearly legible. The indictment was filed in 1988, the same year in which the State alleged that Merida was convicted of the offense of burglary of a building. A rational trier of fact could reasonably connect the 1988 indictment in the pen packet with the "Judgment Revoking Probation" in the same pen packet. Although the judgment is largely illegible, it is readable in critical places, including the places that specify the month and year of the probation revocation ("May 1988"—the same month and year in which the State alleged that Merida was convicted), the defendant to whom the probation revocation applied ("William J. Merida"), and the offense for which Merida was adjudged guilty ("Burglary of a Building").

Additionally, both pen packets contained mugshots, an inmate's date of birth, and descriptions of an inmate's tattoos. Merida's mother testified that the mugshots were of her son. *See Williams v. State*, 89 S.W.3d 325, 329 (Tex. App.—Texarkana 2002, pet. ref'd) (noting that "it has long been an accepted practice to identify the accused by means of a photograph."). Merida's mother also testified that her son's date of birth was April 15, 1970, the same date of birth that was listed in the pen packets. Finally, Merida showed the trier of fact his tattoos, and the record reflects that they matched the tattoos described in the pen packets. We conclude that a rational trier of fact could reasonably infer from all of the evidence presented that Merida was the person convicted of burglary of a building as alleged in the indictment.

As for Merida's complaint that there was no testimony regarding the identity of the fingerprints in the pen packets, such testimony is not necessary when there is other evidence in the record establishing identity, as there is in this case. *See Flowers*, 2007 Tex. Crim. App. LEXIS 428, at \*7 (stating that "there is more than one way to prove a prior conviction."). We also note that, in light of the State's concession at trial that "the fingerprints are bad," fingerprint testimony in this case may not have been helpful to the trier of fact.

When all of the above evidence is considered together, we conclude that the evidence is legally and factually sufficient to support the district court's finding that Merida had been previously convicted of the offenses alleged in the indictment. We overrule Merida's second and third points.

## CONCLUSION

Having overruled Merida's points of error, we affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed:  July 13, 2007

Do Not Publish