NO. 07-03-0071-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



MARCH 8, 2005



______________________________



RANDY L. JONES, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE


_________________________________



FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2001-437483; HONORABLE BRADLEY UNDERWOOD, JUDGE


_______________________________



Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

MEMORANDUM OPINION


 Appellant Randy L. Jones was convicted, pursuant to a plea bargain, of possession
with the intent to deliver a controlled substance (methamphetamine) in the amount of 4 to
200 grams. He was sentenced to eight years confinement in the Texas Department of
Criminal Justice-Institutional Division, probated for eight years, under terms and conditions
of community supervision. He contends on appeal that the trial court erred in failing to
grant his motion to reconsider its ruling on his motion to suppress. (1) He argues there was
not valid consent to search a feed bin being used by appellant, that his vehicle was
searched illegally, and that an oral statement made to a law enforcement officer is
inadmissible under article 38.22 of the Texas Code of Criminal Procedure. 

 Off-duty Slaton police officer Ron McGlone went to a property located in Slaton at
which he kept a horse. Appellant kept two horses on the same premises. Entering the
barn on the property, the officer noticed that some feed was not stored as usual in a feed
bin located in the barn. He raised the lid of the feed bin and noticed a black toolbox inside. 
On opening the toolbox he detected a strong odor and saw coke bottles with tubes coming
out the top. Believing the items were connected with drug activity, he went to the police
station and contacted his lieutenant, officer Timms. The officers returned to the scene. 
Both officers believed the items to be a part of a drug lab, so Timms notified the federal
Drug Enforcement Administration. The officers then went to a location approximately a
quarter of a mile away from the barn to wait for the DEA agents to arrive. 

 While the officers were waiting, they saw appellant and another individual arrive at
the property in a pickup McGlone recognized as belonging to appellant. The officers' view
of the entrance to the barn was obscured, but officer McGlone testified that appellant and
his companion got out of the pickup and appeared to enter the barn. After about five
minutes passed, they got back into the vehicle and attempted to leave the property. Timms
pulled his unmarked police car behind the pickup to keep appellant from leaving the scene
just as DEA agents Robertson and Bender arrived. The officers asked appellant to move
his pickup off the street, up the driveway leading to the barn. Appellant complied, and his
vehicle was blocked in by the officers' vehicles. 

 Agent Robertson told appellant he had obtained consent to search the barn. (2)
Robertson asked appellant if there was anything in the barn that would be a safety concern. 
Appellant responded there was not. The DEA agents and Timms went inside the barn,
looked inside the feed bin, and found items Robertson considered to be part of a
methamphetamine lab.

 When the agents came out of the barn, Robertson told appellant he found what he
believed to be a "disassembled meth lab" inside the barn. Appellant responded that it was
not his, but belonged to someone in Lubbock. At this point appellant and his passenger
were placed in handcuffs. Officer McGlone searched appellant's vehicle and found a glass
dish with an open pocketknife and residue in it. Robertson used a test kit to test the residue
in the dish and it tested presumptively positive for methamphetamine. Appellant was
arrested. 

 Appellant filed a motion to suppress the substance found in his truck and his
statement made to agent Robertson. After a hearing, at which the State presented the
testimony of McGlone, Timms and Robertson, the trial court denied the motion to suppress. 
Later, on appellant's motion, the trial court authorized the taking of the deposition of Mr. R.
T. Farley, the owner of the premises. Appellant then filed a motion asking the court to
reconsider its ruling on the motion to suppress, appending Farley's deposition. That motion
also was denied. 

 Generally, a trial court's ruling on a motion to suppress is reviewed by an abuse of
discretion standard. Oles v. State, 993 S.W.2d 103, 106 (Tex.Crim.App. 1999); Maddox
v. State, 682 S.W.2d 563, 564 (Tex.Crim.App. 1985). In reviewing trial court rulings on
motions to suppress, we afford almost total deference to the trial court's determination of
historical facts when it is supported by the record. Guzman v. State, 955 S.W.2d 85, 89
(Tex.Crim.App. 1997). When, as here, the trial court fails to file findings of fact, we view
the evidence in the light most favorable to the trial court's ruling, and assume that the trial
court made implicit findings of fact that support its ruling as long as those findings are
supported by the record. See Carmouche v. State, 10 S.W.3d 323, 328 (Tex.Crim.App.
2000). If the trial judge's decision is correct on any theory of law applicable to the case, the
decision will be sustained. State v. Ross, 32 S.W.3d 853, 855-56 (Tex.Crim.App. 2000). 
At a suppression hearing, the trial court is the sole and exclusive trier of fact and judge of
the credibility of witnesses and the weight to be given their testimony. Id. at 855. 

 Appellant argues in his first issue that the search of the feed bin located in the barn
was illegal because McGlone did not have equal control and equal use of the property and
therefore his consent to search was invalid. (3) Appellant's contention was that even though
McGlone had access to the property, the feed bin was used exclusively by appellant and
McGlone did not have permission to look inside the bin, or authority to consent to its
search. McGlone, a patrolman and animal control officer for the City of Slaton, testified that
he had given appellant permission to keep animals on the property because appellant had
been keeping a horse at another location in town, in violation of a city ordinance. McGlone
said the property's owner allowed him to use it in exchange for upkeep of the property.
McGlone also testified he owned the feed bin and had placed it in the barn when he began
using the property. He let appellant use the bin. 

 Appellant's argument on appeal is based primarily on Farley's deposition testimony,
which conflicted with McGlone's testimony in some respects. Farley testified he gave
appellant permission to put a horse on the property, but had not given McGlone permission
to keep horses there. Farley said he previously had given McGlone permission to keep
some goats on the property, but later asked him to remove the animals. Appellant
concludes that McGlone had no permission to use the property and could not therefore
have equal control and use of the barn or feed bin. 

 Whether McGlone had the right to use and occupy a particular area to justify his
permitting officers to search that area is a question of fact. Linnell v. State, 767 S.W.2d
925, 927-28 (Tex.App.-Austin 1989, no pet.). Acknowledging the precept that appellate
courts must defer to a trial court's resolution of issues that turn on the credibility and
demeanor of witnesses, see Guzman, 955 S.W.2d at 89, appellant suggests that there is
less need for us to defer to the trial court's evaluation of the relative credibility of McGlone's
and Farley's descriptions of the arrangements between them with respect to McGlone's
occupancy of the barn, because Farley did not appear before the trial judge and he was
required to evaluate Farley's testimony through reading his deposition. While appellant
may be correct that we are in as good a position as the trial court to read and evaluate
Farley's deposition testimony, the deference we owe to the trial court's fact-finding is not
limited to facts based on live testimony. Manzi v. State, 88 S.W.3d 240, 243
(Tex.Crim.App. 2002) (appellate court defers to trial court's findings of fact even when they
are based on affidavits rather than live testimony). Too, the trial court here at least was
able to evaluate McGlone's credibility and demeanor first-hand and to consider Farley's
deposition testimony in light of that evaluation. Moreover, even based solely on the "cold
records" of McGlone's testimony and Farley's deposition testimony, the nature of Farley's
testimony was such (4) that we could not say the trial court abused its discretion by accepting
McGlone's testimony as true. The trial court's implied finding that McGlone had equal
control over and use of the barn and feed bin, giving him capacity to consent to the search,
is supported by the record. Appellant's first issue is overruled. 

 In his second issue, appellant argues that search of his vehicle without a warrant
was illegal because it did not fall under any exception to the warrant requirement and was
performed without probable cause. The State contends that the search was legal as a
search incident to arrest. (5) We agree with the State. 

 When a police officer has made a lawful custodial arrest of the occupant of an
automobile, the officer may, as a contemporaneous incident of that arrest, search the
passenger compartment of that automobile. New York v. Belton, 453 U.S. 454, 460, 101
S. Ct. 2860, 2864, 69 L. Ed 2d 768 (1981); State v. Ballard, 987 S.W.2d 889, 892
(Tex.Crim.App. 1999). An officer may also examine the contents of any containers found
within the passenger compartment. Belton, 453 U.S. at 460. 

 Once an officer has probable cause to arrest, he may search the passenger
compartment of a vehicle as a search incident to that arrest. Ballard, 987 S.W.2d at 892. 
Probable cause exists "at that moment the facts and circumstances within the officer's
knowledge and of which [he] had reasonably trustworthy information were sufficient to
warrant a prudent man in believing the arrested person had committed or was committing
an offense." Guzman v. State, 995 S.W.2d at 90. It is irrelevant whether the arrest occurs
immediately before or after the search, as long as sufficient probable cause exists for the
officer to arrest before the search. Ballard, 987 S.W.2d at 892; Williams v. State, 726
S.W.2d 99, 101 (Tex.Crim.App. 1986) (citing Rawlings v. Kentucky, 448 U.S. 98, 100 S.
Ct. 2556, 65 L. Ed. 2d 633(1980)). 

 Prior to the search of appellant's vehicle, (6) DEA agents had observed in the feed bin
items they considered to be a disassembled methamphetamine lab. Appellant was present
on the property and had apparently left the barn shortly before the officers arrived. The
officers knew that appellant had access to the barn and feed bin where the items were
found. (7) When agent Robertson told appellant of the items' discovery, appellant made a
statement indicating he had some knowledge of them. Under the circumstances present
here, these factors linked appellant to the items, and gave the officers probable cause to
arrest him for possession of drug paraphernalia in the form of the methamphetamine lab.
See Tex. Health & Safety Code Ann. §§ 481.002(17), 481.108 and 481.125(a) (Vernon
2003 & Supp. 2004). See generally Chavez v. State, 769 S.W.2d 284, 288-89 (Tex. App.--Houston [1st Dist.] 1989, pet. ref'd) (listing facts and circumstances indicating an accused's
knowledge and control of contraband). The officer's subsequent search of appellant's truck
was therefore lawful as a search incident to arrest. Appellant's second issue is overruled. 

 Appellant contends in his third issue that his oral statement to agent Robertson is
inadmissable under article 38.22 of the Code of Criminal Procedure because the statement
was made during a custodial interrogation prior to statutory warnings and without it being
recorded. (8) At the hearing on the motion to suppress, agent Robertson testified:


 Q. Okay. Once you found these items in that grain bin, what did you do then,
Agent Robertson?



 I came back out-we came back outside. At that point, we know we have a
contaminated area; therefore, there's certain procedures that we must follow
for guidelines with DEA.


 I came back outside, and I told [appellant] that we had found what I believed
was a disassembled meth lab inside the barn. He said it's not mine. As a
matter of fact, let me quote what he said. I've got it here in my report. Okay.
He said it wasn't his, it was a guy's in Lubbock is what he said. 

 


 After he said that, did you continue on with the procedures that you were
talking about?


 


 
 Yes, ma'am. At that-at that point, we had-we knew we had a possible
methamphetamine lab there. We didn't know what else we had on the
property, so at that time, we went ahead and through procedure, we
handcuffed both persons. 

 


 On cross-examination, when appellant's counsel referred to the exchange as "that
question," Robertson emphasized, "I didn't ask him. I just told him." Appellant argues that
at the time of the exchange between Robertson and appellant, the officers nonetheless had
focused their investigation on appellant, and had made it clear they believed he was
responsible for the items they found in the barn. Additionally, because the officers believed
they had probable cause to arrest appellant and did in fact arrest appellant, (9) he was in
custody at the time he made the statement. Appellant also contends that he was
responding to a question from Robertson. 

 The State does not deny appellant was in custody at the time of his statement to
Robertson, but contends the statement did not stem from custodial interrogation because
he volunteered the information. See Tex. Code Crim. Proc. Ann. art. 38.22 § 5 (Vernon
1979) (statute does not preclude admission of statement that does not stem from custodial
interrogation). 

 Custodial interrogation is questioning initiated by law enforcement officers after a
person has been taken into custody or otherwise deprived of his freedom of action in any
significant way. Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).
The Supreme Court has distinguished between volunteered custodial statements and
those made in response to interrogation: 

 [T]he Miranda safeguards come into play whenever a person in custody is
subjected to either express questioning or its functional equivalent. That is
to say, the term "interrogation" under Miranda refers not only to express
questioning, but also to any words or actions on the part of the police (other
than those normally attendant to arrest and custody) that the police should
know are reasonably likely to elicit an incriminating response from the
suspect. . . . A practice that the police should know is reasonably likely
to evoke an incriminating response from a suspect thus amounts to
interrogation. But, since the police surely cannot be held accountable for the
unforeseeable results of their words or actions, the definition of interrogation
can extend only to words or actions on the part of police officers that they
should have known were reasonably likely to elicit an incriminating
response. 

Rhode Island v. Innis, 446 U.S. 291, 300-302, 100 S. Ct. 1682, 1689-90, 64 L. Ed.
2d 297 (1980).

 We agree appellant's statement was not the result of questioning, or its functional
equivalent, by Robertson. The State compares Robertson's statement with that
addressed in Camarillo v. State, 82 S.W.3d 529, 534-36 (Tex.App.-Austin 2002, no pet.). 
While Robertson's remark that he had found what he believed was a methamphetamine
lab in the barn is perhaps not properly characterized as "offhand," id. at 535, the statement
is not a question, and does not appear to have been calculated to elicit an incriminating
response from the suspect. Appellant's third issue is overruled. 

 The trial court did not abuse its discretion in denying appellant's motion to suppress
and motion to reconsider the motion to suppress. The judgment of the trial court is
affirmed. 


 James T. Campbell

 Justice




Do not publish. 
1. ' 
 
2. 
3. 
 
 
 
4. 
 
 ' 
 
 
5. ' 
 
6. ' 
 ' 
 ' '
 
 
' 
 ' 
7. ' 
 
8. 
 
 
 
 § 
 
9. 
 
 




 mso-style-qformat:yes;
 mso-style-link:"Heading 2 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:2;
 font-size:13.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 mso-bidi-language:EN-US;}
h3
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 3 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:3;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 mso-bidi-language:EN-US;}
h4
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 4 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:4;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-style:italic;}
h5
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 5 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:5;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 mso-bidi-language:EN-US;
 font-weight:normal;}
h6
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 6 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:6;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 mso-bidi-language:EN-US;
 font-weight:normal;
 font-style:italic;}
p.MsoHeading7, li.MsoHeading7, div.MsoHeading7
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 7 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:7;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoHeading8, li.MsoHeading8, div.MsoHeading8
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 8 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:8;
 font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 mso-bidi-language:EN-US;}
p.MsoHeading9, li.MsoHeading9, div.MsoHeading9
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 9 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:9;
 font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoFootnoteText, li.MsoFootnoteText, div.MsoFootnoteText
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Footnote Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:10.0pt;
 font-family:"Calibri","sans-serif";
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
p.MsoHeader, li.MsoHeader, div.MsoHeader
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Header Char";
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 tab-stops:center 3.25in right 6.5in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoFooter, li.MsoFooter, div.MsoFooter
 {mso-style-priority:99;
 mso-style-link:"Footer Char";
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 tab-stops:center 3.25in right 6.5in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoCaption, li.MsoCaption, div.MsoCaption
 {mso-style-noshow:yes;
 mso-style-priority:35;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 mso-pagination:widow-orphan;
 font-size:9.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.MsoFootnoteReference
 {mso-style-noshow:yes;
 mso-style-priority:99;
 vertical-align:super;}
p.MsoTitle, li.MsoTitle, div.MsoTitle
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:15.0pt;
 margin-left:0in;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpFirst, li.MsoTitleCxSpFirst, div.MsoTitleCxSpFirst
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpMiddle, li.MsoTitleCxSpMiddle, div.MsoTitleCxSpMiddle
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpLast, li.MsoTitleCxSpLast, div.MsoTitleCxSpLast
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:15.0pt;
 margin-left:0in;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoSubtitle, li.MsoSubtitle, div.MsoSubtitle
 {mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Subtitle Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoAcetate, li.MsoAcetate, div.MsoAcetate
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Balloon Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
p.MsoNoSpacing, li.MsoNoSpacing, div.MsoNoSpacing
 {mso-style-priority:1;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-parent:"";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraph, li.MsoListParagraph, div.MsoListParagraph
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpFirst, li.MsoListParagraphCxSpFirst, div.MsoListParagraphCxSpFirst
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpMiddle, li.MsoListParagraphCxSpMiddle, div.MsoListParagraphCxSpMiddle
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpLast, li.MsoListParagraphCxSpLast, div.MsoListParagraphCxSpLast
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoQuote, li.MsoQuote, div.MsoQuote
 {mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Quote Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:black;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoIntenseQuote, li.MsoIntenseQuote, div.MsoIntenseQuote
 {mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Intense Quote Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:.65in;
 margin-bottom:14.0pt;
 margin-left:.65in;
 line-height:115%;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD .5pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleEmphasis
 {mso-style-priority:19;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:gray;
 font-style:italic;}
span.MsoIntenseEmphasis
 {mso-style-priority:21;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleReference
 {mso-style-priority:31;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 text-decoration:underline;
 text-underline:single;}
span.MsoIntenseReference
 {mso-style-priority:32;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 letter-spacing:.25pt;
 font-weight:bold;
 text-decoration:underline;
 text-underline:single;}
span.MsoBookTitle
 {mso-style-priority:33;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 letter-spacing:.25pt;
 font-weight:bold;}
p.MsoTocHeading, li.MsoTocHeading, div.MsoTocHeading
 {mso-style-noshow:yes;
 mso-style-priority:39;
 mso-style-qformat:yes;
 mso-style-parent:"Heading 1";
 mso-style-next:Normal;
 margin-top:24.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.Heading1Char
 {mso-style-name:"Heading 1 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 1";
 mso-ansi-font-size:14.0pt;
 mso-bidi-font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 font-weight:bold;}
span.Heading2Char
 {mso-style-name:"Heading 2 Char";
 mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 2";
 mso-ansi-font-size:13.0pt;
 mso-bidi-font-size:13.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading3Char
 {mso-style-name:"Heading 3 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 3";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading4Char
 {mso-style-name:"Heading 4 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 4";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.Heading5Char
 {mso-style-name:"Heading 5 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 5";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;}
span.Heading6Char
 {mso-style-name:"Heading 6 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 6";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 font-style:italic;}
span.Heading7Char
 {mso-style-name:"Heading 7 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 7";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.Heading8Char
 {mso-style-name:"Heading 8 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 8";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;}
span.Heading9Char
 {mso-style-name:"Heading 9 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 9";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.TitleChar
 {mso-style-name:"Title Char";
 mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Title;
 mso-ansi-font-size:26.0pt;
 mso-bidi-font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;}
span.SubtitleChar
 {mso-style-name:"Subtitle Char";
 mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Subtitle;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 font-style:italic;}
span.QuoteChar
 {mso-style-name:"Quote Char";
 mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Quote;
 color:black;
 font-style:italic;}
span.IntenseQuoteChar
 {mso-style-name:"Intense Quote Char";
 mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Intense Quote";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
p.NewDocument, li.NewDocument, div.NewDocument
 {mso-style-name:"New Document";
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 font-family:"Calibri","sans-serif";
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
span.SpellE
 {mso-style-name:"";
 mso-spl-e:yes;}
span.GramE
 {mso-style-name:"";
 mso-gram-e:yes;}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 font-size:10.0pt;
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:Arial;
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:Arial;}
 /* Page Definitions */
 @page
 {mso-footnote-separator:url("07-10-0380.CR%20opinion_files/header.htm") fs;
 mso-footnote-continuation-separator:url("07-10-0380.CR%20opinion_files/header.htm") fcs;
 mso-endnote-separator:url("07-10-0380.CR%20opinion_files/header.htm") es;
 mso-endnote-continuation-separator:url("07-10-0380.CR%20opinion_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-title-page:yes;
 mso-footer:url("07-10-0380.CR%20opinion_files/header.htm") f1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
-->








NO. 07-10-00380-CR; 07-10-00381-CR; 07-10-00382-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL B

 



OCTOBER
8, 2010

 



 

DAVID MATTHEW LAYTON, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

 FROM THE 251ST DISTRICT COURT OF POTTER
COUNTY;

 

NO. 34,435-C, 34,436-C, 34,437-C; HONORABLE ANA ESTEVEZ, JUDGE



 



 

Before QUINN,
C.J., and CAMPBELL and HANCOCK, JJ.

 

 

MEMORANDUM OPINION

 

Appellant, David Matthew Layton,
seeks to appeal orders in each of the above-identified causes denying his
requests for post-conviction DNA testing and appointment of counsel.  See Tex.
Code Crim. Proc. Ann. arts.
64.01, .03, .05 (Vernon Supp. 2010).  The orders denying appellants requests were
signed on July 12, 2010.  The deadline
for perfecting the present appeals was, therefore, August 11, 2010.  See Tex.
R. App. P. 26.2(a)(1).[1]  Appellant filed his notices of appeal on
September 27, 2010.  Under these
circumstances, we lack jurisdiction to dispose of the purported appeals in any
manner other than by dismissing them for want of jurisdiction.  In re Suhre, No. 03-03-00066-CR, 2003 Tex.App.
LEXIS 1343, at *1 (Tex.App.Austin
Feb. 13, 2003, pet. refd).

            Consequently,
the appeals are dismissed for want of jurisdiction.

 

                                                                                                Mackey
K. Hancock

                                                                                                            Justice

 

 

Do
not publish.

            











[1] We are aware, as
appellant notes in his notice of appeal, that appellant filed a petition for
writ of mandamus with this Court relating to the trial courts rulings in these
orders on August 9, 2010.  However, the filing
of a petition for writ of mandamus within the time in which a direct appeal may
be perfected does not extend the time in which the direct appeal must be
perfected.  See id. at 26.2(b).