# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00353-CR

**Stephen Dwayne Cannada, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
## NO. 2040120, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Stephen Dwayne Cannada guilty of delivering a simulated controlled substance. *See* Tex. Health & Safety Code Ann. § 482.002(a)(2) (West 2003). Cannada challenges the sufficiency of the evidence supporting the verdict. We affirm the judgment of conviction.

## BACKGROUND

During the night of January 8, 2004, the Austin Police Department conducted an undercover narcotics operation around Fifth, Sixth and Sabine streets, an area targeted by the APD based on the prevalence of crack cocaine dealing. Cannada approached undercover officer Mark

Luera and asked if he was "looking." When Luera responded that he was, Cannada said he would "hook up" the officer. Cannada told Luera to follow him, stating, "I've got it around the corner." Luera refused to go with Cannada. Cannada eventually walked around a corner where he conferred with two men. Cannada returned carrying an object in his hand and asked Luera for twenty dollars. Luera gave Cannada the money and Cannada handed the officer a small object wrapped in either white cellophane or a paper towel. Luera asked Cannada if "it" was "good," to which Cannada responded affirmatively. Luera then signaled "takedown" officers, and Cannada was arrested.

Forensic tests performed on the substance Cannada sold to Luera revealed that it was not a controlled substance after all, but an ordinary rock, possibly a piece of limestone. Cannada was indicted and subsequently convicted of delivery of a simulated controlled substance. *See id.* The district court sentenced Cannada to eighteen months imprisonment. This appeal ensued.

## DISCUSSION

Cannada brings a single point of error contending that the evidence was insufficient to support a finding that he was guilty of delivering a simulated controlled substance to Luera. We will construe Cannada's point to challenge both the legal and factual sufficiency of the evidence.

**Standard of review**

When there is a challenge to the legal sufficiency of the evidence to sustain a criminal conviction, we consider whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005); *Zuniga v. State*, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004). We review all the

evidence in the light most favorable to the verdict, assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Griffin*, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981). It is not necessary that every fact point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). We consider even erroneously admitted evidence. *Id.*

In a factual sufficiency review, we consider all the evidence equally, including the testimony of defense witnesses and the existence of alternative hypotheses. *Orona v. State*, 836 S.W.2d 319, 321 (Tex. App.—Austin 1992, no pet.). We consider all the evidence, rightly or wrongly admitted. *See Camarillo v. State*, 82 S.W.3d 529, 537 (Tex. App.—Austin 2002, no pet.). Due deference must be accorded the fact-finder's determinations, particularly those concerning the weight and credibility of the evidence, and we may disagree with the result only to prevent a manifest injustice. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000). We will deem the evidence factually insufficient to sustain the conviction if the proof of guilt is too weak or the contrary evidence is too strong to support a finding of guilt beyond a reasonable doubt. *Zuniga*, 144 S.W.3d at 484-85; *see Johnson*, 23 S.W.3d at 11.

**Application**

Cannada was convicted under section 482.002(2) of the health and safety code, which provides:

(a) A person commits an offense if the person knowingly or intentionally . . . *delivers a simulated controlled substance* and the person:

. . .

(2) *represents the substance to be a controlled substance* in a manner that would lead a reasonable person to believe that the substance is a controlled substance.

. . .

Tex. Health & Safety Code Ann. § 482.002(a)(2) (emphasis added). Cannada appears to challenge the sufficiency of the evidence that Cannada (1) "delivered" a (2) substance that was represented to be a "simulated controlled substance."

### *Delivery*

Cannada emphasizes that after he was arrested, the APD did not find the $20 buy money in his possession. However, Officer Luera testified that he did give Cannada $20 in exchange for what was represented to be a rock of crack cocaine. Officer Christopher Conchin, one of the arresting officers, added that it is not uncommon in undercover arrests to be unable to find the money given to a dealer.

Moreover, delivery under section 482.002(a)(2) can be proven without establishing that Luera actually paid Cannada the $20. The definition of "deliver" in chapter 482 of the health and safety code includes offering to sell a simulated controlled substance. In addition to testifying that money actually changed hands, Luera testified that Cannada offered him the substance in exchange for $20.

4

Considering all the evidence in a neutral light, a rational trier of fact could have found beyond a reasonable doubt that Cannada acted with intent to offer to sell a simulated controlled substance to Luera. *See Vodochodsky*, 158 S.W.3d at 509; *Zuniga*, 144 S.W.3d at 484-85. Moreover, proof of guilt is not so weak, nor the contrary evidence so strong, as to render the evidence factually insufficient. *See Zuniga,* 144 S.W.3d at 484-85; *Johnson*, 23 S.W.3d at 9. The evidence is legally and factually sufficient to support the jury's finding on the element of delivery.

### *Representing the substance to be a simulated controlled substance*

Cannada suggests that he could not be convicted of delivering a simulated controlled substance because there is no evidence that he ever explicitly represented that the substance in question was crack cocaine, but employed only the slang term "rock." *See Jenkins v. State*, 820 S.W.2d 178, 179 (Tex. Crim. App. 1991); *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).[1] *Jenkins* and *Boykin*, however, construed subsection (1) of health and safety code section 482.002(a), which requires proof that a defendant "expressly represents the substance to be a controlled substance." *See* Tex. Health & Safety Code Ann. § 482.002(a)(1) (West 2003). Cannada, by contrast, was indicted under subsection (2) of section 482.002(a), which requires proof only that the defendant "represents the substance to be a controlled substance in a manner that would lead a reasonable person to believe that the substance is a controlled substance." The health and safety code further elaborates:

---

[1] In his appellate brief, Cannada claims that he was actually "harassing Officer Luera because they were present in the area."

5

(a) In determining whether a person has represented a simulated controlled substance to be a controlled substance in a manner that would lead a reasonable person to believe the substance was a controlled substance, a court may consider, in addition to all other logically relevant factors, whether:

(1) the simulated controlled substance was packaged in a manner normally used for the delivery of a controlled substance;

(2) the delivery or intended delivery included an exchange of or demand for property as consideration for delivery of the substance and the amount of the consideration was substantially in excess of the reasonable value of the simulated controlled substance; and

(3) the physical appearance of the finished product containing the substance was substantially identical to a controlled substance.

Tex. Health & Safety Code Ann. § 482.003 (West 2003).

Luera testified that Cannada inquired whether he was "looking." Luera, who has been with the police department's street response unit for one and one-half years, explained that "looking" is street terminology for, "Are you looking to buy crack?" He added that Cannada's promise to "hook [him] up" usually means, "I'll take care of you. I'll give you crack. If you're looking to buy, I'm the one that's going to supply it." Sergeant Robert McCowan, who had been involved in hundreds of prior drug arrests, also testified. When asked what language is typically used during a purchase of crack cocaine, McCowan responded, "It can be anything from just simply eye contact. I've made a lot of buys just – you look at a guy and a guy looks at you and you both know what's going on. So anywhere from there, all the way up to ask if – you ask them if they have a 20. You ask them if they're holding. They'll ask you if you're looking. It's – nobody says, do you have any crack cocaine?"

6

Luera described the substance delivered to him by Cannada as being wrapped in white cellophane or a paper towel. Luera indicated that this is common packaging for crack cocaine. This observation was echoed by Gloria Rodriquez, a forensic drug chemist for APD for thirteen years, who tests crack cocaine on a daily basis as part of her job responsibilities. Rodriguez testified that the rock Cannada delivered to Luera resembled a crack rock, and that under the circumstances it was reasonable for Luera to believe he had been given a rock of crack cocaine.

Luera further testified that Cannada asked him for the twenty dollars saying that he, Cannada, would give Luera the rock. McCowan stated his undercover officers usually pay twenty dollars for one rock of crack cocaine.

Considering the foregoing evidence, including the packaging, the rock's similar appearance to crack cocaine, and the fact that Cannada sold it to Luera in a manner typical of a crack cocaine deal, *see* Tex. Health & Safety Code Ann. § 482.003, we conclude that the evidence was legally and factually sufficient to support the jury's verdict that Cannada knowingly or intentionally delivered the rock to Luera in a manner that would have led a reasonable person to believe that it was crack cocaine. *Anderson v. State*, 895 S.W.2d 756, 758 (Tex. App.—Texarkana 1994, no pet.). For the same reasons, we conclude that the evidence is sufficient to support the finding that the rock Cannada gave Luera was a "simulated controlled substance." *See* Tex. Health & Safety Code Ann. § 482.001(4) (West 2003) (defining "simulated controlled substance" under Chapter 482 as a "substance that is purported to be a controlled substance, but is chemically different from the controlled substance it is purported to be.").

**CONCLUSION**

Having overruled Cannada's sole point of error, we affirm the district court's judgment of conviction.

_____

Bob Pemberton, Justice

Before Justices B. A. Smith, Puryear and Pemberton

Affirmed

Filed: January 12, 2006

Do Not Publish