# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00004-CV

**In the Matter of J. A. G.**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT NO. J-24,925, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

J.A.G., a juvenile, was adjudicated delinquent following the district court's finding that he interfered with an emergency telephone call. *See* Tex. Pen. Code Ann. § 42.062(a) (West Supp. 2005). J.A.G.'s grandmother placed a call to 911 when J.A.G. refused to go to school. In two issues, J.A.G. challenges the legal and factual sufficiency of the evidence. We will affirm the judgment of the district court.

## BACKGROUND

On September 15, 2004, Deputy Keith Goodman of the Travis County Sheriff's Office responded to a 911 interference call from an address in Pflugerville. When Goodman arrived at the address, he encountered Lupe Serna, who was crying and appeared distraught, angry, and upset. Goodman testified that:

Ms. Serna told me that her grandson, [J.A.G.], was out of control and refusing to go to school, that he had gone upstairs and locked himself in. Ms. Serna told me that she had called 911 to get deputies to respond because she was a little bit intimidated by her grandson, who is 5'11" and, I believe, 175 pounds. Apparently she had called 911, and then she told [J.A.G.] she was talking to 911 personnel whenever [J.A.G.] took the phone away from her and disconnected it.

Goodman further testified that Serna told him that J.A.G. took her keys away from her so that she could not go anywhere. Serna also told him that she then "fled" from her residence, went to a neighbor's house, and completed a 911 call from there.

During J.A.G.'s adjudication hearing, the State called Serna as a hostile witness. On direct examination, Serna admitted that she called 911 after first calling 311[1] and not being able to get through, but she denied feeling intimidated or threatened by J.A.G.:

Q: And on September the 15th, do you remember stating that you were intimidated by [J.A.G.]?

A: No, huh-uh.

Q: And do you remember telling the sheriff officer that you fled the residence because you were intimidated by [J.A.G.]?

A. No.

Q: Did you call 911 on your grandson from the neighbor's residence?

A: That—yes, after the 311 no response.

Q: And did you make a report on your grandson about him being out of control and rebellious?

A: No.

---

[1] 311 is a number reserved for non-emergency calls related to city services.

Q: And did you say that your grandson was using vulgar language and cursing?

A: No.

Q: You don't remember saying that?

A: I don't remember.

Q: Why did you call 911?

A: Because 311 did not respond.

Q: Were you upset or afraid?

A: I was not afraid. I was just needing him to go to school.

On cross-examination, Serna provided further information about the incident:

Q: Just to be clear, were you afraid of [J.A.G.]?

A: No.

Q: Did [J.A.G.] threaten you physically? Did he threaten to hit you?

A: No.

Q: Did he threaten to break anything in the house?

A: No.

Q: Did he—did he throw anything around the house?

A: No.

Q: Was he behaving in a manner that you felt physically threatened?

A: No.

Q: Okay. Was there any property in your house that you expected him—or any property anywhere belonging to you that you expected to have been damaged by [J.A.G.]?

A: No.

Q: That morning, you and [J.A.G.] got into a little disagreement about him going to school?

A: Yes.

Q: He didn't want to go to school and you wanted him to go to school; is that correct?

A: Yes.

Q: And he was refusing to go to school; is that correct?

A: Yes.

Q: And you called 311 so that you could get someone to encourage him to go to school?

A: Yes.

Q: Is that correct? You didn't view that as an emergency, did you?

A: No, sir.

The State also called Robbin Kohn, a paralegal for the District Attorney's office, to testify to statements she heard Serna make to Texanna Davis, the Assistant District Attorney prosecuting the case. Kohn testified that Serna said she called 911 on her grandson, and that when she tried to make the call, he disconnected her phone.

The tape of the 911 call Serna placed was not admitted into evidence. The State played the tape to the court solely for the purpose of impeaching Serna with prior inconsistent

4

statements. After the tape was played for the court, Serna admitted telling the 911 operator that she was having a problem controlling J.A.G., that he was being very rebellious and using vulgar language towards her, that he was treating her with no respect, and that he had disconnected her phone.

After hearing all of the evidence, the court found Serna's testimony "credible in parts and incredible in parts." The court found the testimony of Kohn and Officer Goodman credible. Based on this evidence, the court then found that J.A.G. had engaged in delinquent conduct:

> And I think what occurred is exactly what—what you testified to, Ms. Serna—was that you tried to get your grandson to get up for school and he wouldn't do it. And that you called 911, that you were concerned—so concerned, that you fled. You were concerned that he had your keys. And you called from a neighbor's house. And that you were in a state of feeling intimidated or threatened by your grandson. . . . I think that it's clear that your grandmother loves you, and she wants you to do well. . . . But in terms of what occurred and what happened there, that's exactly what happened. You interfered with her calling 911.

The court then placed J.A.G. on probation for eight months. This appeal followed.

## DISCUSSION

In two issues on appeal, J.A.G. contends that the evidence is legally and factually insufficient to prove that the call he disconnected was an emergency call.

### Standard of review

We review adjudications of delinquency in juvenile cases by applying the same standards applicable to sufficiency of the evidence challenges in criminal cases. *In re M.C.L.*, 110 S.W.3d 591, 594 (Tex. App.—Austin 2003, no pet.). When there is a challenge to the legal

5

sufficiency of the evidence to sustain a criminal conviction, we consider whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005); *Zuniga v. State*, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004). We review all the evidence in the light most favorable to the verdict, assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *See Griffin v. State*, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981). It is not necessary that every fact point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). We consider even erroneously admitted evidence. *Id.*

In a factual sufficiency review, we consider all the evidence equally, including the testimony of defense witnesses and the existence of alternative hypotheses. *Orona v. State*, 836 S.W.2d 319, 321 (Tex. App.—Austin 1992, no pet.). We consider all the evidence, rightly or wrongly admitted. *See Camarillo v. State*, 82 S.W.3d 529, 537 (Tex. App.—Austin 2002, no pet.). Due deference must be accorded the fact-finder's determinations, particularly those concerning the weight and credibility of the evidence, and we may disagree with the result only to prevent a manifest injustice. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000). We will deem the evidence factually insufficient to sustain the conviction if the proof of guilt is too weak or the contrary evidence is too strong to support a finding of guilt beyond a reasonable doubt. *Zuniga*, 144 S.W.3d at 484-85; *see Johnson*, 23 S.W.3d at 11.

**Application**

In order for J.A.G. to be adjudicated delinquent, the State had to prove beyond a reasonable doubt that J.A.G. knowingly prevented or interfered with Serna's ability to place an emergency telephone call. *See* Tex. Pen. Code Ann. § 42.062(a). The statute defines "emergency" as "a condition or circumstance in which any individual is or is reasonably believed by the individual making a telephone call to be in fear of imminent assault or in which property is or is reasonably believed by the individual making the telephone call to be in imminent danger of damage or destruction." *Id*. § 42.062(d).

It is undisputed that no property was in danger of damage or destruction during the incident. Therefore, for the call to be an emergency call as defined by the statute, the State needed to prove that Serna was in fear of imminent assault. A person commits an assault if the person intentionally, knowingly, or recklessly causes bodily injury to another, intentionally or knowingly threatens another with imminent bodily injury, or intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative. *Id*. § 22.01(a). An assault is "imminent" if it is immediately going to happen. *See Stefanoff v. State*, 78 S.W.3d 496, 501 (Tex. App.—Austin 2002, pet. ref'd) (defining "imminent" in relation to the term "harm").

Officer Goodman testified that Serna appeared distraught and upset when he found her and that she told him that J.A.G. was "out of control," she was "a little bit intimidated" by him, and that she "fled" her home to call 911. Serna also admitted that she told the 911 operator that J.A.G. used "vulgar language" towards her. Viewed in the prism of the light most favorable to the

7

verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Serna was in fear of imminent assault from J.A.G. *See Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). The evidence is thus legally sufficient to prove that the call J.A.G. disconnected was an emergency call. We overrule J.A.G.'s first issue.

In a factual sufficiency review, we consider all of the evidence in a neutral light. *See Zuniga*, 144 S.W.3d at 484. Officer Goodman's testimony that Serna was "a little bit intimidated" must be weighed against Serna's repeated and insistent testimony that she did not feel threatened or afraid. However, determining the credibility of witnesses is the exclusive province of the trier of fact. *See Jones*, 944 S.W.2d at 647. The district court found Goodman's testimony credible and Serna's testimony "credible in parts and incredible in parts." Having reviewed the record, we understand why the district court reached this conclusion. According to the State, Serna filed an affidavit of non-prosecution in the case, and Serna testified that she did not want to pursue charges against her grandson. She told the prosecutor on the day of the trial that she did not want to testify, and when the State called her to testify as a hostile witness, Serna's testimony was littered with contradictions and statements that she "did not remember" what she told the 911 operator, the police, and the prosecutor. Therefore, it was rational for the district court to discredit Serna's testimony that she did not feel threatened by J.A.G. and to credit Officer Goodman's testimony that Serna told him that she was so "intimidated" by J.A.G.'s verbally abusive and "out of control" behavior that she "fled" her house. Considering all of the evidence in a neutral light, a rational trier of fact could have found beyond a reasonable doubt that Serna was in fear of imminent assault. The evidence is thus

factually sufficient to prove that the call J.A.G. disconnected was an emergency call. We overrule J.A.G's second issue.

**CONCLUSION**

Having overruled J.A.G.'s issues on appeal, we affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed:   April 28, 2006